**RECEIVED**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SEP 1 1 2008

JUDGE HARRY D. LEINENWEBER
U.S. DISTRICT COURT JUDGE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 07 CR 819-01 |
| vs. ) | Judge Harry D. Leinenweber |
| ) | |
| LATISHA BENNETT ) | |

**FILED**
Sep 11 2008
JUDGE HARRY D. LEINENWEBER
U.S. DISTRICT COURT JUDGE

## PLEA AGREEMENT

1. This Plea Agreement between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD, and defendant LATISHA BENNETT, and her attorney, IMANI CHIPHE, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(B), as more fully set forth below. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2. The superseding indictment in this case charges defendant with conspiracy to commit bank theft, in violation of Title 18, United States Code, Section 371 (Count One), and bank theft, in violation of Title 18, United States Code, Sections 2113(b) and 2 (Count Two).

3. Defendant has read the charges against her contained in the superseding indictment, and those charges have been fully explained to her by her attorney.

4. Defendant fully understands the nature and elements of the crimes with which she has been charged.

**Charge to Which Defendant is Pleading Guilty**

5.  By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to Count One of the superseding indictment. Count One charges defendant with conspiracy to take and carry away, with the intent to steal or purloin, approximately $130,000 belonging to, and in the care, custody, control, management, and possession of, the TCF Bank, located at 601 West 14th Street, Chicago Heights, Illinois, the deposits of which were then insured by the Federal Deposit Insurance Corporation, in violation of Title 18, United States Code, Section 2113(b), and Title 18, United States Code, Section 2; all in violation of Title 18, United States Code, Section 371. In addition, as further provided below, defendant agrees to the entry of a forfeiture judgment.

**Factual Basis**

6.  Defendant will plead guilty because she is in fact guilty of the charge contained in Count One of the superseding indictment. In pleading guilty, defendant admits the following facts and that those facts establish her guilt beyond a reasonable doubt, and establish a basis for forfeiture of the property described elsewhere in this Plea Agreement:

Defendant admits that, starting at least as early as on or about December 4, 2007 and lasting until at least on or about December 5, 2007, defendant conspired along with Pamela Hamilton ("Hamilton") and Patrice Oliver ("Oliver") to take and carry away, with the intent to steal or purloin, approximately $130,000 belonging to, and in the care, custody, control, management, and possession of, the TCF Bank, located at 601 West 14th Street, Chicago

Heights, Illinois, (hereinafter "TCF Bank"), the deposits of which were then insured by the Federal Deposit Insurance Corporation, in violation of Title 18, United States Code, Sections 2113(b) and 2; all in violation of Title 18, United States Code, Section 371.

Specifically, defendant admits that the TCF Bank was located inside an Ultra Foods grocery store in Chicago Heights, Illinois. Defendant further admits that, at the time of the theft, defendant was the assistant manager of that TCF Bank branch. Defendant previously worked with Hamilton at the Guaranty Bank in Glenwood, Illinois where, at the time of the bank theft, Hamilton was a branch manager.

At some point between August 2007 and December 4, 2007, defendant told Hamilton about thefts of money from the TCF Bank. On or about December 4, 2007, defendant and Hamilton met and discussed stealing money from the TCF Bank. Hamilton advised defendant to ask Oliver, who is Hamilton's daughter, if Oliver knew of anyone who would participate in the bank theft with defendant. Defendant talked to Oliver, while with Hamilton, and Oliver agreed to participate in the bank theft with Hamilton and defendant. Defendant, Oliver, and Hamilton agreed to steal money from the TCF Bank. Defendant learned that a package containing $275,000 in cash was being held at the TCF Bank. The package was supposed to have been transported to the Federal Reserve on or about Tuesday, December 4, 2007, but was still in a bank vault at the TCF Bank as of on or about the night of Wednesday, December 5, 2007. Defendant informed Hamilton about the existence of the package, and Hamilton communicated the information to Oliver. All three agreed that they

would steal the money from the package in the bank vault of the TCF Bank on the night of Wednesday, December 5, 2007, after the TCF Bank had closed for the evening.

As part of the plan, on the evening of December 5, 2007, defendant met Oliver at a McDonalds near the TCF Bank. Oliver changed into clothes supplied by Hamilton in the back of defendant's car. Hamilton went to the Ultra Foods grocery store to determine whether the TCF Bank was closed and whether all the TCF Bank employees had left so that defendant and Oliver could enter the TCF Bank without being observed by bank employees. After arriving at the Ultra Foods grocery store, Hamilton contacted defendant and Oliver by telephone to inform them that there was a security guard at the Ultra Foods grocery store. Defendant, Oliver, and Hamilton agreed that Hamilton would distract the security guard by locking her keys in her vehicle in the parking lot in order to allow defendant and Oliver to steal money from the TCF Bank without the security guard being present. Defendant and Oliver arrived at the parking lot of the Ultra Foods grocery store. Hamilton met defendant and Oliver outside the Ultra Foods grocery and gave Oliver a spare set of car keys. Defendant understood that Hamilton intended to lock her other set of car keys in her car and then to ask the security guard inside the Ultra Foods grocery store for assistance. Defendant and Oliver went inside the Ultra Foods grocery store in order to steal money from the TCF Bank.

Defendant unlocked the gate dividing the TCF Bank from the Ultra Foods grocery store. Once the gate was unlocked, defendant went inside and Oliver followed. Defendant

unarmed the alarm using her manager's code and an unassigned teller's code and opened the vault containing the package with $275,000. Defendant opened the package, took money from the package, and put the money in a bag brought by defendant that defendant had placed around Oliver's neck. Defendant also put money in a purse that Oliver had brought. Defendant filled the bag and the purse, but was unable to take all of the $275,000 because it did not fit in the available bags. Defendant placed the package containing the remaining money back in the vault and closed the vault. Defendant then rearmed the alarm and left the TCF Bank with Oliver. Defendant locked the gate of the TCF Bank. Defendant and Oliver left the Ultra Foods grocery store. Defendant and Oliver, with Hamilton's assistance in the parking lot and elsewhere, took a total of approximately $130,000 from the package in the vault at the TCF Bank. Hamilton was in the parking lot with the security guard next to her car when defendant and Oliver left the Ultra Foods grocery store.

    Defendant drove in defendant's car to Hamilton's residence. Defendant and Oliver hid the money in Hamilton's bedroom. Defendant and Oliver then returned to the Ultra Foods grocery store with the car keys for Hamilton's car. Hamilton drove in her car with Oliver, while defendant drove separately, back to Hamilton's residence.

    Defendant, Oliver, and Hamilton went into Hamilton's bedroom and split the proceeds of the bank theft three ways, with each of them receiving about $43,300. Defendant concealed approximately $39,960 in storage locker that she had rented at Extra Space Storage in Schererville, Indiana. Defendant also deposited $2000 of the bank theft proceeds in a

bank account at the Guaranty Bank in Glenwood, Illinois on or about December 6, 2007. Hamilton was the teller for this transaction.

Defendant acknowledges that, at the time of the theft, the deposits of the TCF Bank were insured by the FDIC.

### Maximum Statutory Penalties

7. Defendant understands that the charge to which she is pleading guilty carries the following statutory penalties:

    a. A maximum sentence of 5 years' imprisonment. This offense also carries a maximum fine of $250,000, or twice the gross gain or gross loss resulting from that offense, whichever is greater. Defendant further understands that the judge also may impose a term of supervised release of not more than three years.

    b. Defendant further understands that the Court must order restitution to the victim of the offense in an amount determined by the Court.

    c. In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which she has pled guilty, in addition to any other penalty or restitution imposed.

### Sentencing Guidelines Calculations

8. Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines. Defendant understands that the Sentencing

Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

9.  For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a.  **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2007 Guidelines Manual.

b.  **Offense Level Calculations.**

i.  The base offense level for the charge in Count One of the superseding indictment is 6, pursuant to Guideline §2B1.1(a)(2);

ii.  A 10-level enhancement is appropriate because the amount of loss involved in the offense of conviction for which defendant is responsible is approximately $130,000. Therefore, pursuant to Guideline §2B1.1(b)(F), the base offense level is increased 10 levels.

iii.  A 2-level enhancement is appropriate because defendant abused a position of private trust, namely, her position as an assistant manager at TCF Bank, pursuant to Guideline §3B1.3.

iv.  Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for her criminal conduct. If the government does not

7

receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for her actions within the meaning of Guideline §3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to her ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

    v.  In accord with Guideline §3E1.1(b), defendant has timely notified the government of her intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline §3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

    c.  **Criminal History Category.** With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

    d.  **Anticipated Advisory Sentencing Guidelines Range.** Therefore, based on the facts now known to the government, the anticipated offense level is 15, which, when combined with the anticipated criminal history category of I, results in an anticipated

advisory Sentencing Guidelines range of 18 to 24 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose.

      f.     Defendant and her attorney and the government acknowledge that the above Guideline calculations are preliminary in nature and based on facts known to the parties as of the time of this Plea Agreement. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw her plea on the basis of the Court's rejection of these calculations.

      g.     Both parties expressly acknowledge that while none of the Guideline calculations set forth above are binding on the Court or the Probation Office, the parties have agreed pursuant to Fed.R.Crim.P. 11(c)(1)(B) that certain components of those calculations – specifically, those set forth above in subparagraph 9(b) of this paragraph – are binding on the parties, and it shall be a breach of this Plea Agreement for either party to present or advocate a position inconsistent with the agreed calculations set forth in the identified subparagraph.

      h.     Defendant understands that with the exception of the Guideline provisions identified above as binding on the parties, the Guideline calculations set forth

above are non-binding predictions, upon which neither party is entitled to rely, and are not governed by Fed.R.Crim.P. 11(c)(1)(B). Errors in applying or interpreting any of the Sentencing Guidelines (other than those identified above as binding) may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the Guidelines. The validity of this Plea Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw her plea, nor the government the right to vacate this Plea Agreement, on the basis of such corrections.

### Agreements Relating to Sentencing

10. Each party is free to recommend whatever sentence it deems appropriate.

11. It is understood by the parties that the sentencing judge is neither a party to nor bound by this Plea Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw her guilty plea.

12. Regarding restitution, the parties acknowledge that the total amount of restitution owed to TCF Bank is $130,000, minus any credit for funds repaid prior to sentencing, and that pursuant to Title 18, United States Code, § 3663A, the Court must order defendant, together with any jointly liable co-defendants, to make full restitution in the

amount outstanding at the time of sentencing. Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing.

13.    Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

14.    After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the original indictment and the remaining count of the superseding indictment as to this defendant.

## Forfeiture

15.    The superseding indictment charges that defendant is liable to the United States for approximately $130,000, which funds are subject to forfeiture because those funds constitute proceeds of the violation alleged in Count One. Further, defendant has subjected real and personal property to forfeiture, namely $39,960, because that property is traceable to proceeds obtained directly from the violation alleged in Count One of the superseding indictment. By entry of a guilty plea to Count One of the superseding indictment, defendant acknowledges that the property identified above is subject to forfeiture.

16.    Defendant agrees to the entry of a forfeiture judgment in the amount of $130,000, and against the property identified above, in that this property is subject to forfeiture. Prior to sentencing, defendant agrees to the entry of a preliminary order of forfeiture relinquishing any right of ownership she has in the above-described funds and

property and further agrees to the seizure of these funds so that these funds and property may be disposed of according to law. Defendant is unaware of any third party who has an ownership interest in, or claim to, the property subject to forfeiture.

17. Defendant understands that pursuant to 18 U.S.C. § 3663A, this Court shall order restitution in the amount of $130,000. It is agreed by the parties that any payments made towards the restitution obligation shall be credited to the outstanding forfeiture judgment, or, alternatively, if any property has been ordered forfeited, upon the repatriation of those funds to victims, the restitution order shall be reduced.

### Presentence Investigation Report/Post-Sentence Supervision

18. Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope and extent of defendant's conduct regarding the charges against her, and related matters. The government will make known all matters in aggravation and mitigation relevant to the issue of sentencing.

19. Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of her financial circumstances, including her recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for

acceptance of responsibility pursuant to Guideline §3E1.1 and enhancement of her sentence for obstruction of justice under Guideline §3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

20.     For the purpose of monitoring defendant's compliance with her obligations to pay a fine and restitution during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Plea Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Plea Agreement

21.     This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 07 CR 819-01.

22.     This Plea Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver or release by the

United States or any of its agencies of any administrative or judicial civil claim, demand or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

23. Defendant understands that by pleading guilty she surrenders certain rights, including the following:

    a. **Trial rights.** Defendant has the right to persist in a plea of not guilty to the charges against her, and if she does, she would have the right to a public and speedy trial.

        i. The trial could be either a jury trial or a trial by the judge sitting without a jury. Defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

        ii. If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and her attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

        iii.    If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict her unless, after hearing all the evidence, it was persuaded of her guilt beyond a reasonable doubt and that it was to consider each count of the superseding indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

        iv.    If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

        v.    At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and her attorney would be able to cross-examine them.

        vi.    At a trial, defendant could present witnesses and other evidence in her own behalf. If the witnesses for defendant would not appear voluntarily, she could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

   vii. At a trial, defendant would have a privilege against self-incrimination so that she could decline to testify, and no inference of guilt could be drawn from her refusal to testify. If defendant desired to do so, she could testify in her own behalf.

  b. **Appellate rights.** Defendant further understands she is waiving all appellate issues that might have been available if she had exercised her right to trial, and may only appeal the validity of this plea of guilty and the sentence imposed. Defendant understands that any appeal must be filed within 10 calendar days of the entry of the judgment of conviction.

  c. Defendant understands that by pleading guilty she is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically preserved above. Defendant's attorney has explained those rights to her, and the consequences of her waiver of those rights.

## Other Terms

24. Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

25. Defendant understands that pursuant to Title 12, United States Code, Section 1829, her conviction in this case will prohibit her from directly or indirectly participating in the affairs of any financial institution insured by the Federal Deposit Insurance Corporation

(FDIC) except with the prior written consent of the FDIC and, during the ten years following her conviction, the additional approval of this Court. Defendant further understands that if she violates this prohibition, she may be punished by imprisonment for up to five years and a fine of up to $1,000,000.

## Conclusion

26. Defendant understands that this Plea Agreement will be filed with the Court, will become a matter of public record and may be disclosed to any person.

27. Defendant understands that her compliance with each part of this Plea Agreement extends throughout the period of her sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event she violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

28. Should the judge refuse to accept defendant's plea of guilty, this Plea Agreement shall become null and void and neither party will be bound thereto.

29. Defendant and her attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Plea Agreement to cause defendant to plead guilty.

30. Defendant acknowledges that she has read this Plea Agreement and carefully reviewed each provision with her attorney. Defendant further acknowledges that she understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: 9-11-08

_____
PATRICK J. FITZGERALD
United States Attorney

_____
LATISHA BENNETT
Defendant

_____
HALLEY B. GUREN
Assistant U.S. Attorney

_____
IMANI CHIPHE
Attorney for Defendant